UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| ANTHONY ROBINSON, | ) | |
| | ) | |
| Petitioner, | ) | CIVIL ACTION |
| v. | ) | NO. 08-11535-RGS |
| | ) | |
| PETER ST. AMAND, | ) | |
| | ) | |
| Respondent. | ) | |

**REPORT AND RECOMMENDATION ON
RESPONDENT'S MOTION TO DISMISS
PETITION FOR WRIT OF HABEAS CORPUS**

March 15, 2010

DEIN, U.S.M.J.

## I.  INTRODUCTION

The Petitioner, Anthony Robinson ("Robinson" or the "Defendant"), has filed a

petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his 1997

conviction for first degree murder, armed robbery and illegal possession of a firearm.  His

conviction and the denial of his motion for a new trial were affirmed by the

Massachusetts Supreme Judicial Court ("SJC") in Commonwealth v. Robinson, 449

Mass. 1, 864 N.E.2d 1186 (2007).  By his habeas petition, Robinson contends that his

constitutional rights were violated by (1) the trial court's refusal to allow proposed expert

testimony relating to the psychology of interrogations and confessions, (2) the trial

judge's refusal to give a requested jury instruction, (3) the trial judge's decision to excuse

a juror who cited family illness and declined to appear for the second day of

deliberations, and (4) the SJC's refusal to exercise its discretionary authority to reduce the verdict.[1]

This matter is presently before the court on the Respondent's Motion to Dismiss (Docket No. 15) pursuant to which the Respondent is seeking the dismissal of the petition for failure to state a claim. For the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Respondent's Motion to Dismiss (Docket No. 15) be ALLOWED.

## II.   STATEMENT OF FACTS[2]

### The Underlying Crime

The state trial and appellate courts' findings of fact are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). Norton v. Spencer, 351 F.3d 1, 6 (1st Cir. 2003), and cases cited. As the SJC summarized the facts, the jury could have found at trial:

> On November 24, 1995, three men, one of whom was later identified
> as the defendant, approached the victim, Barrington Nevins, and five
> of his friends who were standing on a sidewalk in the Dorchester
> section of Boston. The defendant was carrying a rifle and another of
> the assailants had a handgun. The armed men demanded that Nevins
> and his friends turn over their leather jackets. One of the assailants

---

[1] A fifth ground raised in the petition, that Robinson's armed robbery conviction should be vacated, is moot, as the SJC did vacate that conviction on the grounds that it was subsumed in his conviction for felony murder with armed robbery as the predicate felony. Robinson, 449 Mass. at 11, 864 N.E.2d at 1193. Therefore this ground will not be discussed herein.

[2] The Respondent has filed a three volume Supplemental Answer ("SA") containing the record below.

held the handgun to the head of one victim.  Despite the fact that the victims surrendered their jackets and pocket money, the defendant shot Nevins in the chest, killing him, and then pointed the rifle at another victim.  As the robbers fired their weapons, the five surviving victims fled, but returned to the scene a short time later.

Three of the victims recognized the robbers.  Two of them identified the defendant from a photographic array at the police station on the night of the incident.  At trial, three of the victims identified the defendant as the killer.  They all knew him by his nickname, "Ant." The three also identified the other two assailants by nickname.  The defendant, who was seventeen years of age at the time, fled after the murder and was arrested less than one month later in Petersburg, Virginia.  While in custody, he was interviewed by Detective Sergeant Patrick Kelleher of the Petersburg, Virginia, police department, and confessed to his role in the robbery and murder. His confession was tape recorded.  The interview lasted approximately forty-five minutes, including a recorded seven-minute portion.

The defendant testified that he was selling cocaine on the street the night of the murder, several blocks from the area where the shooting occurred.  Hearing gunshots, he left the corner where he was selling drugs.  When he learned that he was wanted for murder, he was frightened and went to Virginia to see his grandmother.  He then turned himself in to the Virginia police.

Concerning his interview with Detective Kelleher, the defendant stated the following at trial.  The detective interviewed him at a juvenile detention facility, informed him that two eyewitnesses, as well as one of the other assailants, had identified him as the shooter. The defendant said that the detective told him that the only way to avoid a life sentence was to confess to the shooting.  He claimed that the detective related information about two recent cases, one in which a man who had killed someone did not speak to the police and received a life sentence; in the second, the "man admitted to shooting a person by accident and everything worked out for him and his friends."  The defendant said that he ultimately confessed believing, "I wouldn't spend the rest of my life in jail.  Things would work out for me like the person in the ... story."  He said that the detective provided him with the details of the crime, that the

recorded confession was false, and that he did not shoot the victim.
On cross-examination, the defendant admitted that he knew four of
the robbery victims, including Nevins, the man who was killed.  He
also said that when he spoke with Detective Kelleher he knew that
he was wanted for murder and that he had been advised of his
Miranda rights before he gave the recorded confession.

Robinson, 449 Mass. at 3-4, 864 N.E.2d at 1188-89 (footnotes omitted).

## Expert Testimony

The defendant offered the testimony of Professor Saul Kassin as an expert witness
on the subject of the psychology of police interrogations and confessions.  The trial judge
conducted a voir dire, and issued a "Memorandum of Decision and Order on Defendant's
Motion to Admit Expert Testimony of the Psychology of False Confession" ("Memo.")
(SA Ex. 7).  As detailed therein, the defendant wanted "Dr. Kassin to testify that (1) false
confessions exist; (2) individuals can be coerced into giving false confessions; (3) police
use deceptive and coercive methods of interrogation; (4) certain police techniques
increase the risk of obtaining false confessions; (5) these techniques are described as
acceptable in Criminal Interrogation and Confessions, a book from which the Virginia
police extracted the methods used to interrogate Robinson; (6) the techniques used to
interrogate Robinson have produced false confessions in other actual cases and in
laboratory studies conducted by Dr. Kassin; and (7) videotaping and audiotaping of
police interrogations is common practice and can deter coercive police conduct."  (Memo.
at 2).  The trial judge applied the standard for determining the admissibility of expert
testimony as set forth in Commonwealth v. Lanigan, 419 Mass. 15, 25-26, 641 N.E.2d

1342, 1349 (1994), which "accept[ed] the basic reasoning" of the decision in <u>Daubert v.</u>

<u>Merrill Dow Pharm., Inc.,</u> 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

(Memo. at 2-3).  As the trial judge quoted:

> We suspect that general acceptance in the relevant scientific
> community will continue to be the significant, and often the only,
> issue.  We accept the idea, however, that a proponent of scientific
> opinion evidence may demonstrate the reliability or validity of the
> underlying scientific theory or process by some other means, that is
> without establishing general acceptance.

(Memo. at 3 (quoting <u>Lanigan</u>, 419 Mass. at 26, 641 N.E.2d at 1349)).

The trial judge concluded that the proffered testimony did not meet the require-

ments for the admission of expert testimony articulated in <u>Lanigan</u> (and thus <u>Daubert</u>)

because there was no empirical data to determine the ratio between true and false confes-

sions, and there was very little scientific knowledge on the subject of false confessions at

all.  (Memo. at 3-4).  In addition, the trial judge found that juries commonly determined

whether confessions were true, and that there was no need for expert testimony to aid in

this determination. (<u>Id.</u> at 4).  Finally, the trial judge excluded the testimony because it

was not directly connected to Robinson or the specific facts of the case, and Dr. Kassin

did not have any information about Robinson's psychological profile, rendering the

proposed testimony "too vague and speculative to be of assistance to the jury."  (<u>Id.</u> at 5).

The SJC thoroughly reviewed the trial judge's decision as well as the transcript of

the voir dire.  <u>Robinson</u>, 449 Mass. at 5-6, 864 N.E.2d at 1189-90.  The SJC, like the trial

court, applied the standard set forth in <u>Lanigan</u>.  <u>Id.</u> at 5, 864 N.E.2d at 1189.  The SJC

recognized that the trial judge "has broad discretion regarding the admission of expert testimony" and stated that it was to review the decision "only for abuse of discretion." Id. at 5, 864 N.E.2d at 1189.  In fact, the SJC did not limit itself to a deferential standard, but rather concluded after its own analysis that the evidence presented "fell far short of the standards governing the admissibility of scientific testimony.  The testimony failed the *Lanigan* criteria in every respect and was properly excluded."  Id. at 7, 864 N.E.2d at 1190.  In particular, but without limitation, after reviewing Dr. Kassin's testimony the SJC agreed that "his opinions are not generally accepted, require further testing, and are not yet a subject of 'scientific knowledge'" as Dr. Kassin himself had admitted in one of his own publications.  Id. at 6, 864 N.E.2d at 1190.  Thus, the SJC concluded, "his proposed testimony that certain interrogation techniques have previously produced false confessions does not meet either the general acceptance or reliability criteria established by the *Lanigan* case."  Id. at 6, 864 N.E.2d at 1190.  Finally, the SJC recognized that "the subject of psychological manipulation of a defendant and its relation to false confessions presents a serious issue," which might properly be the subject of competent scientific evidence.  Id. at 6-7, 864 N.E.2d at 1190.  However, the testimony of Dr. Kassin did not meet the requirements of admissibility.  Id.

### Jury Instruction

Robinson is challenging the fact that, in response to a question from the jury, the trial judge did not instruct the jury as defense counsel had requested.  This issue was also fully explored by the SJC on direct appeal, which found that the trial judge had properly

described the relevant legal concepts and, therefore, that the charge as given was

sufficient.  The relevant facts are as follows.

The Massachusetts "'humane practice' requires that when statements amounting to

a confession are offered in evidence, the question whether they were voluntary is to be

decided at a preliminary hearing in the absence of the jury.  If he (the judge) is satisfied

that they are voluntary, they are admissible; otherwise, they should be excluded.  If the

judge decides that they are admissible, he should then instruct the jury not to consider the

confession if, upon the whole evidence in the case, they are satisfied that it was not the

voluntary act of the defendant."  Commonwealth v. Tavares, 385 Mass. 140, 149-50, 430

N.E.2d 1198, 1204-05 (1982) (internal quotations omitted).  Consistent with this

"humane practice," the trial judge instructed the jury "that inter alia, the burden is on the

Commonwealth to prove that the defendant's will was not overcome and that he was not

coerced, tricked, or cajoled into making a statement."  Robinson, 449 Mass. at 7, 864

N.E.2d at 1190.  Then, during deliberations the jury sent the following question: "As we

understood the instruction on the confession, if the confession was coerced it must be

disregarded.  Is this correct?  What is coercion?  Can something be coerced and true?"

Id.

In response to this question, defense counsel proposed the following instruction:

> You may consider whether the defendant, in making the statement,
> was influenced by any threat or promise of leniency or by trickery or
> by deceit or by improper inducement by law enforcement officers.
> You may also consider the conduct of the defendant, the defendant's

age and educational background, his intelligence and emotional
stability and the details of the interrogation.

Id. at 7 n.9, 864 N.E.2d at 1191 n.9.  (SA Ex. 15 at 8-8 - 8-9).  The trial judge rejected

this request.  Rather, she gave the following instruction, repeating some of her earlier jury

charge:

> Now, you have heard testimony about a statement allegedly made by
> the defendant concerning the offense which is charged in the case.
> Before you may consider any such statement as evidence, the
> Commonwealth must prove to you beyond a reasonable doubt,
> number one, that the defendant made the statement that he is alleged
> to have made and, number two, that he made it voluntarily, freely,
> and rationally.
>
> As to this second element, you must be persuaded beyond a
> reasonable doubt that under the totality of the circumstances
> presented to you the statement was the product of the defendant's
> free will and rational intellect.  The burden falls on the
> Commonwealth to prove beyond a reasonable doubt that the
> defendant's will was not overborne.
>
> So you have to determine whether the will of the defendant had been
> overborne so that the statement was not his free and voluntary act.
> And that question is to be resolved in light of the totality of all the
> circumstances as they existed at the time and place that this
> statement was given.
>
> The Commonwealth must prove that the defendant was not coerced,
> tricked, or cajoled into making the statement.  You have asked me
> what is coercion.  I asked one of the law clerks to look it up in the
> dictionary, in Webster's Dictionary.  Basically, what it means is to
> bring about by force or threats to nullify individual will.
>
> So, in other words, you must find that the Commonwealth has
> proven that the defendant's statement was voluntary, not
> involuntary.  It must be a voluntary statement, a product of the
> defendant's free will and rational intellect, not coerced, tricked or
> cajoled, before you may consider it.

-8-

In addition, the Commonwealth must prove that the defendant received his Miranda warnings, that he understood those warnings and waived his right to remain silent.

If the Commonwealth does not satisfy you that the defendant made the statement freely, voluntarily, and as a product of his own free will and rational intellect and that he received, understood, and waived his Miranda rights, then you may not consider the statement in any manner whatsoever.  If the Commonwealth has met its burden, then you may consider the defendant's statements for all purposes along with all of the other evidence.

I can give you, you know, definitions of these things, but what you have to do is examine the circumstances as they existed at the time and place that the defendant made the statement and ma[k]e your own determination based upon all of the circumstances, whether or not the Commonwealth has proved that the statement was made voluntarily, freely, and rationally.  So it's an issue for you to determine based upon what you find the believable evidence to be.

(SA Ex. 15 at 8-12 - 8-14).

The SJC reviewed this charge and found it adequate.  Noting that "[t]he proper response to a jury question must remain within the discretion of the trial judge," the SJC ruled that there was no abuse of discretion because the charge properly described the legal concepts at issue.  Robinson, 449 Mass. at 8, 864 N.E.2d at 1191.  As the SJC held:

The over-all effect of her statements communicated to the jury the instruction that was required – specifically, that they could not consider a coerced confession.  The only question remaining is whether her definition of coercion was too narrow.  She provided a dictionary definition of coercion: "to bring about by force or threats to nullify individual will."  We conclude that this definition was sufficient.

Id.

## **Discharge of a Deliberating Juror**

Robinson contends that his constitutional rights were violated when the trial judge

discharged a deliberating juror without bringing her to court for a hearing, or exploring

other options.  The relevant facts, as described by the SJC, are as follows:

> The jury began deliberations on the afternoon of October 7, 1997,
> and deliberated that day and the following day.  On the third day of
> deliberations, one juror did not appear at the appointed time of 9
> a.m.  A court officer telephoned that juror, who responded that she
> had no one to care for her children because "their girl is sick."  The
> juror indicated that she was trying to find another care giver and
> would call back in five minutes.  The judge advised the parties
> sometime thereafter that the "[care giver] who was previously ill is
> feeling a little better now and is able to take over for her," but that
> the juror had added gratuitously, "I want you to know I'm not happy
> about having to come in."  When the juror did not appear, the court
> officer called her again shortly before 11 a.m. and was told that "[the
> care giver] is too sick to come and she [the juror] is not coming [to
> court]."

Id. at 8-9, 864 N.E.2d at 1192 (punctuation in original).  When the trial judge indicated

that she was considering replacing the juror and having the jury begin deliberations anew,

"the defendant objected and requested the judge to consider other options, such as

ordering the juror to appear and inquiring of her why she was ignoring 'her oath.'"  Id. at

9, 864 N.E.2d at 1192.  At around 11:20 a.m., the trial judge decided to discharge the

juror, noting that the juror had been consistently late during the two week trial, was

offering only a "transparent excuse" and refusing to return to court, and was causing

unreasonable delay.  Id.  An alternate juror was selected, and the jury was instructed to

being deliberating anew.  The jury asked one question which was answered the following

morning, and the jury returned their verdicts at 11:00 a.m. on the morning after the juror

was replaced.  Id.

The SJC rejected the defendant's claim of error.  The replacement of a juror in

Massachusetts who does not appear for deliberations is governed by Mass. Gen. Laws

ch. 234A, § 39, which provides in relevant part that "[t]he court shall have authority to

dismiss an impanelled juror who has not appeared for juror service upon a finding that

there is a strong likelihood that an unreasonable delay in the trial would occur if the court

were to await the appearance of the juror."  The SJC, applying state law, found that the

trial judge had conducted a sufficient inquiry to enable her to arrive at a "reasoned

decision" that there would be "a strong likelihood of unreasonable delay" if they were to

wait for the juror.  Id. at 10-11, 864 N.E.2d at 1192-93 (quoting Commonwealth v.

Taylor, 33 Mass. App. Ct. 655, 657, 604 N.E.2d 40, 41 (1992)) (punctuation omitted).

As the SJC ruled:

> The judge here conducted an adequate inquiry.  The defendant had
> the opportunity to state his position and did so.  His suggestion of
> exploring other options was impractical.  The recalcitrant juror had
> indicated that she would not leave her home.  Arresting the juror and
> bringing her to court (an alternative considered and rejected by the
> judge) would have entailed bringing the juror's child or children
> with her.  Providing alternative care for them would have consumed
> much time.  Ultimately, the entire effort would be for naught.  A
> juror concerned about her child's (or children's) welfare would be
> distracted and unable to concentrate on the evidence or deliberate
> fairly on the case, and the juror would eventually have had to be
> released after much additional delay.  The defendant's other
> suggestion of inquiring of the other jurors whether the recalcitrant
> juror had refused to deliberate would have intruded into the
> deliberations of the jury.  See *Commonwealth v. Kincaid*, 444 Mass.

381, 391, 828 N.E.2d 45 (2005), and cases cited ("A judge may not inquire into the deliberative process of the jury").

The judge clearly acted within her discretion in determining, at 11:20 a.m., that the juror had created an unreasonable delay. The judge stated several times that she was concerned that the jury had been waiting since 9 a.m. The juror had never made any effort to contact the court; all communication with her was initiated by the court officer; after making excuses the juror had said she would not come in; it was to no one's advantage to force her to come in; and she had been "consistently late" throughout the trial.

Id. at 10-11, 864 N.E.2d at 1193. Moreover, the court ruled that there had been "no showing of prejudice to the defendant sufficient to set aside the verdict" and the court had "carefully instructed the newly constituted jury to begin their deliberations anew." Id. at 11, 864 N.E.2d at 1193. Finally, in a footnote, the SJC noted in response to the Defendant's due process argument that "no specific type of hearing is mandated in all situations" and that the hearing was sufficient to satisfy due process. Id. at 11 n.13, 864 N.E.2d at 1193 n.13.

### **Failure to Reduce the Verdict**

The SJC has the "extraordinary power" under Mass. Gen. Laws ch. 278, § 33E to reduce the verdict. The Court, "[a]fter a careful review of the record," found "no reason" to exercise such authority. Id. at 11, 864 N.E.2d at 1193. The Defendant contends that this decision was incorrect.

### **III.   DISCUSSION**

### **A.     Standard of Review**

The standard of review to be applied to Robinson's habeas corpus petition is set forth in 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").  Under this standard, a federal habeas court may not grant a writ of habeas corpus unless the underlying state court adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

As the United States Supreme Court has explained:

> A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in our cases, or if it decides a case differently than we have done on a set of materially indistinguishable facts.... The court may grant relief under the "unreasonable application" clause if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular case.

Bell v. Cone, 535 U.S. 685, 694, 122 S. Ct. 1843, 1850, 152 L. Ed. 2d 914 (2002).

If the state court decision was not "contrary to" federal law as defined by the Supreme Court, the habeas court must then determine "whether the state court ruling was an 'unreasonable application' of the Court's precedent."  Vieux v. Pepe, 184 F.3d 59, 65-66 (1st Cir. 1999).  An "unreasonable application is different from an incorrect one."  Bell, 535 U.S. at 694, 122 S. Ct. at 1850.  In order to reach the level of "unreasonable," "some increment of incorrectness beyond error is required."  McCambridge v. Hall, 303

F.3d 24, 36 (1ˢᵗ Cir. 2002) (en banc) (internal quotation and citation omitted).  This "increment need not necessarily be great, but it must be great enough to make the decision unreasonable in the independent and objective judgment of the federal court." Id.  Thus, "a habeas petitioner must do more than merely identify an incorrect result." Jackson v. Coalter, 337 F.3d 74, 81 (1ˢᵗ Cir. 2003).  "Rather, that application must also be unreasonable."  Williams v. Taylor, 529 U.S. 362, 411, 120 S. Ct. 1495, 1522, 146 L. Ed. 2d 389 (2000).  See also Smiley v. Maloney, 422 F.3d 17, 20 (1ˢᵗ Cir. 2005); Horton v. Allen, 370 F.3d 75, 80 (1ˢᵗ Cir. 2004), cert. denied, 543 U.S. 1093, 125 S. Ct. 971, 160 L. Ed. 2d 905 (2005).

To the extent that Robinson is challenging the factual determination of the state courts, the state trial and appellate courts' findings of facts are entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1).  See Norton, 351 F.3d at 6 (quoting Sumner v. Mata, 455 U.S. 591, 592-593, 102 S. Ct. 1303, 1304, 71 L. Ed. 2d 480 (1982)); Rashad v. Walsh, 300 F.3d 27, 35 (1ˢᵗ Cir. 2002).  The petitioner has the burden of overcoming the presumption by "clear and convincing evidence."  Teti v. Bender, 507 F.3d 50, 57 (1ˢᵗ Cir. 2007), cert. denied 128 S. Ct. 1719, 170 L. Ed. 2d 525 (2008).

Applying these principles, this court recommends that the habeas petition be dismissed.

-14-

B. **Exclusion of Testimony**

By his habeas petition, Robinson contends that the State courts' exclusion of the

proffered expert testimony was contrary to or an unreasonable application of Daubert and

Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 119 S. Ct. 1167, 143 L. Ed.2d 238

(1999).  For the reasons detailed herein, this court finds that this claim does not support

the issuance of a habeas petition.

Robinson does not articulate a violation of any constitutional right; rather, he

argues that the state courts, in applying Daubert/Kumho, reached the wrong conclusion.

This argument fails to state a claim under 28 U.S.C. § 2254.

"A defendant's right to present relevant evidence is not unlimited, but rather is

subject to reasonable restrictions."  United States v. Scheffer, 523 U.S. 303, 308, 118

S. Ct. 1261, 1264, 140 L. Ed. 2d 413 (1998).  Thus, a defendant "does not have an unfet-

tered right to offer testimony that is incompetent, privileged, or otherwise inadmissible

under standard rules of evidence."  Taylor v. Illinois, 484 U.S. 400, 410, 108 S. Ct. 646,

653, 98 L. Ed. 2d 798 (1988).  Moreover, "State and Federal Governments unquestion-

ably have a legitimate interest in ensuring that reliable evidence is presented to the trier of

fact in a criminal trial.  Indeed, the exclusion of unreliable evidence is a principal objec-

tive of many evidentiary rules.  Scheffer, 523 U.S. at 309, 118 S. Ct. at 1265 (citing

Daubert, 509 U.S. at 589, 113 St. Ct. at 2794-95).  Thus, the fact that the trial judge

elected to perform gatekeeping functions and preview the proposed expert testimony does not state a claim for a constitutional violation.

Similarly, a habeas petition is not the appropriate vehicle for challenging whether a state court properly excluded evidence.  Daubert/Kumho establish rules of evidence, they do not establish constitutional standards.  See Hirt v. Law, No. CV 09-83-M-DWM-JCL, 2010 WL 378319, at *9 (D. Mont. Jan. 29, 2010).  "Federal courts can grant habeas relief only when there is a violation of federal statutory or constitutional law, not when there has been error under state law[,]" and "[t]he admissibility of evidence is generally a matter of state law."  Milone v. Camp, 22 F.3d 693, 698, 703 (7th Cir. 1994).  Daubert/Kumho "address the Federal Rules of Evidence, not the United States Constitution.  They are not binding on state courts, and they do not help a habeas petitioner to show that he is 'in custody in violation of the Constitution or laws or treaties of the United States.'  28 U.S.C. § 2254(a)."  Hirt, 2010 WL 378319, at *9.  Consequently, a claim that a state trial judge failed to follow Daubert states a claim of violation of a state's evidentiary rule, and "warrants federal habeas corpus relief only when such violation results in the denial of fundamental fairness, and concomitantly, a violation of due process."  Arroyo v. Brady, No. Civ. A. 05-11277-DPW, 2006 WL 962151, *5 (D. Mass. April 11, 2006) (quoting Brown v. O'Dea, 227 F.3d 642, 645 (6th Cir. 2000)).

Robinson does not argue that the exclusion of Dr. Kassin's testimony resulted in a fundamentally unfair trial, and the record would not support such a conclusion.  Unlike Crane v. Kentucky, 476 U.S. 683, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986), cited by

Robinson, where the trial court's exclusion of any and all facts concerning the manner in which a confession was obtained was found to have violated the defendant's constitutional rights to a fair trial, the Robinson jury heard all the facts relating to how his confession was obtained. Witnesses were examined and cross-examined, and the jury viewed the taped portion of the confession. There was no violation of Robinson's constitutional rights.

Furthermore, the state courts' findings that the proffered testimony failed to meet either the general acceptance or reliability standards established in Lanigan (and Daubert/Kumho) are amply supported by the record. Without belaboring the point, as detailed above, Dr. Kassin himself admitted that his opinions were not generally accepted and were not yet the subject of "scientific knowledge." See, e.g., Robinson, 449 Mass. at 6, 864 N.E.2d at 1190. The trial judge appropriately discharged her "responsibility for ensuring that an expert's testimony as to scientific, technical, or other specialized knowledge 'both rests on a reliable foundation and is relevant to the task at hand.'" Nna v. Am. Standard, Inc., 630 F. Supp. 2d 115, 133 (D. Mass. 2009) (quoting Hochen v. Bobst Group, Inc., 290 F.3d 446, 452 (1st Cir. 2002) (quoting Daubert, 509 U.S. at 597, 113 S. Ct. at 2799. There was no error.

In sum, as the court held in Neverson v. Bissonnette, 242 F. Supp. 2d 78 (D. Mass. 2003), in language equally applicable here:

> This is not a case in which the trial judge prohibited a defendant from calling any witnesses. Indeed, this is not a case in which the trial judge prohibited a defendant from calling expert witnesses. In

-17-

this case, the trial judge made a careful, reasoned ruling with respect
to the qualifications and opinion of one particular expert and
determined that [the expert] would not be helpful to the trier of fact.
The trial judge merely fulfilled [her] duty, as required by Massachu-
setts law.  The trial judge was entirely within [her] gatekeeping
province in prohibiting [the proposed witness's] testimony as an
expert.  *See Commonwealth v. Lanigan*, 419 Mass. 15, 24-26, 641
N.E.2d 1342 (1994) (adopting standards of *Daubert v. Merrell Dow
Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S. Ct. 2786, 125 L. Ed. 2d
469 (1993) as the evidentiary law of the Commonwealth of
Massachusetts)[.]

...

This claim, therefore, presents only an issue of state evidentiary law,
not federal constitutional law.  Errors of state law do not provide a
basis for federal relief.  *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112
S. Ct. 475, 116 L. Ed. 2d 385 (1991).  Hence, even assuming the
trial judge erred under Massachusetts law in excluding [the proposed
expert's] testimony – a proposition this Court believes strains the
bounds of common sense – the Court must deny [petitioner's habeas]
claim.

Id. at 86-87 (additional internal citations omitted).

C.      **Failure to Give Jury Instruction**

Robinson contends that the trial judge's failure to give the requested jury

instruction quoted above violated his Fourteenth Amendment rights to a fair trial because

the jury was not properly allowed to consider all the relevant circumstances in assessing

whether his confession was voluntary.  (See Pet. Opp. to Mo. to Dismiss (Docket No. 18)

at 5-6).  Thus, he argues, the jury should have been expressly instructed that they could

consider his physical and mental condition, his age and experience, and the details of the

questions.  This argument fails to state a claim for habeas relief.

-18-

"As a general rule, improper jury instructions will not form the basis for federal habeas corpus relief." Niziolek v. Ashe, 694 F.2d 282, 290 (1st Cir. 1982). "The question presented to the federal court is whether the challenged jury instructions violated the petitioner's constitutional rights. '[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment.'" Gaines v. Matesanz, 272 F. Supp. 2d 121, 131 (D. Mass. 2003) (quoting Cupp v. Naughten, 414 U.S. 141, 146, 94 S. Ct. 396, 400, 38 L. Ed. 2d 368 (1973)) (additional citations omitted).

In the instant case Robinson has not identified any errors in the instructions, much less an error which rose to constitutional levels. As the SJC ruled, "[a] judge need not use any particular words in instructing the jury as long as the legal concepts are properly described." Robinson, 449 Mass. at 8, 864 N.E.2d at 1191. The instructions as given made it clear that the jury was to consider the "totality of the circumstances" in assessing whether the Commonwealth had met its burden of proving that the Defendant's will was not overborne. This concept, which was basically what the Defendant was requesting, was repeated several times in response to the jury's question. The Defendant has not stated a claim for habeas relief.

### D.   **Discharging the Juror**

In his opposition to the motion to dismiss, Robinson has not addressed the claim raised in his petition that the discharge of the juror during deliberations violated his constitutional rights. Therefore, this ground may be considered to have been waived.

-19-

See <u>United States v. Jiminez</u>, 498 F.3d 82, 88 (1ˢᵗ Cir. 2007) ("issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.") (internal quotation omitted). If the merits of this claim are reached, they still fail to state a claim for habeas relief.

"[I]t is well established that the decision to substitute an alternate juror is committed to the sound discretion of the trial court and will not be overturned absent a showing of bias or prejudice to the defendant." <u>Olszewski v. Spencer</u>, 466 F.3d 47, 64 (1st Cir. 2006) (citation and punctuation omitted). Here, Robinson has not even attempted to make such a showing. As the SJC detailed, it was more likely that the defendant would be harmed by requiring the distracted and unwilling juror to continue her service than by allowing her to be discharged. <u>See</u> <u>Robinson</u>, 449 Mass. at 10-11, 864 N.E.2d at 1193. There was no constitutional violation.

### E.    **Failure to Reduce the Verdict**

Robinson also has not addressed the claim raised in his petition that the SJC's failure to reduce the verdict violated his constitutional rights, and, as detailed above, the ground may be considered waived. In any event, the SJC's refusal to exercise its "extraordinary power" under Mass. Gen. Laws ch. 278, § 33E does not state a habeas claim. "In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." <u>Estelle v. McGuire</u>, 502 U.S. 62, 68, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991). Robinson's claim should be dismissed.

## IV.  **CONCLUSION**

For all the reasons detailed herein, this court recommends to the District Judge to whom this case is assigned that Respondent's Motion to Dismiss (Docket No. 15) be ALLOWED.[3]

    / s / Judith Gail Dein

Judith Gail Dein
United States Magistrate Judge

---

[3]  The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party ho objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985).  Accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).